UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:20-CR-00085-1-JRG-CRW |
| ) | |
| TASHA MARIE CROSS ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Tasha Marie Cross's Pro Se Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (Amendment 821) [Doc. 37], the Federal Defender Services of Eastern Tennessee's ("FDSET") Supplement [Doc. 39], and the United States's Response in Opposition [Doc. 40]. For the reasons herein, the Court will deny Ms. Cross's motion.

### I. BACKGROUND

In 2020, law-enforcement officers had obtained an arrest warrant for Ms. Cross and executed that warrant at a hotel in Kingsport, Tennessee. [Plea Agreement, Doc. 15, at 2]. After obtaining her consent to search her hotel room, they discovered drugs, digital scales, cash, a firearm, and ammunition. [*Id.*]. A federal grand jury went on to charge Ms. Cross with possessing with the intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) [Indictment, Doc. 1, at 1–2].

She later entered into a plea agreement with the United States under Federal Rule of Criminal Procedure 11(c)(1)(C)[1] and pleaded guilty to possessing with the intent to distribute five grams or more of methamphetamine, [Plea Agreement at 1]—which carried a five-year mandatory minimum sentence, 21 U.S.C. § 841(b)(1)(B). With a criminal history category of IV and a total offense level of 25, she had an advisory guidelines range of 84 to 105 months' imprisonment. [Statement of Reasons, Doc. 30 at 1]. In the Rule 11(c)(1)(C) plea agreement, however, the parties agreed that the appropriate sentence was 70 to 87 months' imprisonment. [Plea Agreement at 3]. The Court accepted the plea agreement and, in doing so, sentenced Ms. Cross to 76 months, [J., Doc. 29, at 2; Statement of Reasons at 2].

Acting pro se, Ms. Cross now moves the Court to reduce her sentence under 18 U.S.C. § 3582(c)(2) and Amendment 821 to Appendix C of the *United States Sentencing Commission Guidelines Manual*, and FDSET has filed a supplemental motion on her behalf. The United States opposes Ms. Cross's motion. Having carefully reviewed the parties' arguments, the Court is now prepared to rule on Mr. Cross's motion.

## II. LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (internal quotation omitted). Congress enacted one of those exceptions in 18 U.S.C. § 3582(c)(2), which states:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court

---

[1] Rule 11(c)(1)(C) allows the United States to "agree that a specific sentence or sentencing range is the appropriate disposition of the case," Fed. R. Crim. P. 11(c)(1)(C), but a plea agreement under Rule 11(c)(1)(C) requires the Court's approval, Fed. R. Crim. P. 11(c)(3)(A).

2

Case 2:20-cr-00085-DCLC-CRW   Document 41   Filed 04/22/25   Page 2 of 12
PageID #: 136

may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In short, a defendant will be eligible for a reduction under § 3582(c)(2) if he satisfies two requirements. *See United States v. McClain*, 691 F.3d 774, 777 (6th Cir. 2012) (stating that the defendant "must show" that she is entitled to a sentence reduction under § 3582(c)(2)).

First, the defendant must have "been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *United States v. Taylor*, 815 F.3d 248, 250 (6th Cir. 2016) (quoting 18 U.S.C. § 3582(c)(2));[2] *see* U.S. Sent'g Guidelines Manual § 1B1.10(a)(1) cmt. n.1(A) ("Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment . . . that lowers the applicable guideline range[.]").[3] In determining whether a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," 18 U.S.C. § 3582(c)(2), the Court identifies the amended guidelines range—that is, the guidelines range that would have applied to the defendant if the applicable amendment had been in effect during sentencing—and substitutes this guidelines range for the original guidelines range. *Dillon v. United States*, 560 U.S. 817, 827 (2010); U.S. Sent'g Guidelines Manual § 1B1.10(b)(1).

Second, a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Taylor*, 815 F.3d at 250 (quoting 18 U.S.C. § 3582(c)(2)). USSG § 1B1.10 contains the Sentencing Commission's policy statements. *See* U.S. Sent'g Guidelines

---

[2] This is so because Congress has "charge[ed] the Commission both with deciding whether to amend the Guidelines and with determining whether and to what extent an amendment will be retroactive." *Dillon v. United States*, 560 U.S. 817, 826–27 (2010) (footnote committed) (citing 28 U.S.C. § 994(o), (u))).

[3] "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Douglas*, 634 F.3d 852, 862 (6th Cir. 2011) (alteration in original) (footnote omitted) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993))).

3

Manual § 1B1.10(a)(1) (providing that a reduction "shall be consistent with this policy statement"). A reduction is consistent with USSG § 1B1.10 when the amendment at issue (1) applies to the defendant and (2) "ha[s] the effect of lowering [that] defendant's applicable guideline range." *Id.* § 1B1.10(a)(2)(A)–(B).

Lastly, the Court must consider any applicable factors under 18 U.S.C. § 3553(a), as well as public-safety factors, when determining—in its discretion—whether a reduction "is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827; *see United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010) ("[T]he district court *may* reduce a previously imposed sentence if [the] statutory requirements . . . are met. Section 3582 does not create a *right* to a reduced sentence, however." (citing U.S. Sent'g Guidelines Manual § 1B1.10 cmt. background)); U.S. Sent'g Guidelines Manual § 1B1.10 cmt. n.1(B)(i) (stating that courts "shall consider the factors set forth in 18 U.S.C. § 3553(a)"); U.S. Sent'g Guidelines Manual § 1B1.10 cmt. n.1(B)(ii)–(iii) (providing that courts "shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and "may consider post-sentencing conduct of the defendant").

### III. ANALYSIS

In 2023, the Sentencing Commission submitted to Congress a multi-part amendment to the Sentencing Guidelines's criminal history rules: Amendment 821 in Appendix C to the *Guidelines Manual*. The Sentencing Commission gave retroactive effect to two parts of that amendment: Part A and Part B, Subpart 1. U.S. Sent'g Guidelines Manual § 1B1.10(d); U.S. Sent'g Guidelines Suppl. to app. C, amend. 825. Part A of Amendment 821 addresses "status points" under USSG § 4A1.1. Status points are the criminal history points that apply to

defendants who have committed their underlying federal offense while serving a prior criminal sentence—most often probation, parole, or supervised release. Specifically, Part A decreases status points from two points to one point for defendants with seven or more criminal history points and eliminates status points for defendants with six or fewer criminal history points. As amended by Amendment 821, § 4A1.1 in Chapter Four of the *Guidelines Manual* now reads:

> The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
>
> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.
>
> (d) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection.
>
> (e) Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S. Sent'g Guidelines Manual § 4A1.1.

In Part B, Subpart 1 of Amendment 821, the Sentencing Commission created a brand new guideline: USSG § 4C1.1 in Chapter Four of the *Guidelines Manual*, in which it instituted a decrease of two offense levels for "Zero-Point Offenders" (i.e., offenders with no criminal history points) whose offense did not involve certain aggravating factors. To receive this two-level adjustment, a zero-point offender must "meet[] all of the following criteria":

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.

*Id.* § 4C1.1.

In moving for a sentence reduction, Ms. Cross does not specify whether she is seeking relief under Part A or Part B of Amendment 821, or both.[4] Neither does FDSET, which does not expressly argue that she is entitled to a sentence reduction at all. Instead, it supplements her pro se motion only to "ask[] the Court to include in its order Ms. Cross's amended criminal history score and resulting amended criminal history category" because they "will not only impact later court proceedings but will also likely impact Ms. Cross's service of her term of incarceration." [FDSET's Suppl. at 1, 4]. The United States, however, maintains that Ms. Cross

---

[4] Ms. Cross—who received seven total criminal history points at sentencing—is plainly not a zero-point offender, so Part B does not avail her.

is ineligible for a sentence reduction. According to the United States, Ms. Cross's amended guidelines range under Amendment 821 is 70 to 87 months, "the same range the parties had previously agreed was appropriate," so "Amendment 821 does not have the effect of reducing [her] guideline range." [United States's Resp. at 4].

At sentencing, Ms. Cross received five criminal history points and two status points for a total criminal history score of 7. [PSR, Doc. 22, ¶¶ 33–35]. Under Part A, she is now entitled to the elimination of her status points, *see* U.S. Sent'g Guidelines Manual § 4A1.1(e), without which her total criminal history score is 5 instead of 7. A criminal history score of 5 results in a criminal history category of III rather than IV, and alongside Ms. Cross's total offense level of 25, her amended guidelines range—that is, the guidelines range that would have applied to her if Amendment 821 had been in effect during her sentencing—is 70 to 87 months. As the United States argues, this is the very guidelines range that the parties' advocated for in their Rule 11(c)(1)(C) agreement, which, again, the Court accepted when it imposed a sentence of 76 months. Ostensibly, then, Amendment 821 does not lower Ms. Cross's applicable guidelines range, as the United States asserts.

But Ms. Cross's story does not end here. Again, she qualifies for a sentence reduction only if Amendment 821 "ha[s] the effect of lowering [her] applicable guideline range," USSG § 1B1.10(a)(2)(B), and the "applicable guideline range" means "the guideline range that corresponds to the offense level and criminal history category . . . which is determined *before* consideration of *any departure provision* in the Guidelines Manual or variance." *United States v. Beckham*, 838 F.3d 731, 733 (6th Cir. 2016) (quoting *id.* § 1B1.10 cmt. n.1(A)). The United States acknowledges that the Court "calculated the advisory guidelines range as 84 to 105 months' imprisonment, based on an offense level of 25 and criminal history category of IV," but

7

that the Court "agreed that category IV overstated Cross's criminal history" and "thus accepted the plea agreement and sentenced Cross to 76 months in prison." [United States's Resp. at 3].

The Court's decision to apply a criminal history category of III rather than IV to Ms. Cross constituted a downward departure. *See* USSG § 4A1.3(b)(1) ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."); *see also United States v. Gilbert*, No. 24-1453, 2025 WL 252848, at *2 (6th Cir. Jan. 16, 2025) ("The district court did not find that [the defendant's] juvenile conviction was improperly scored under the guidelines; rather, it expressly found that scoring the juvenile conviction overrepresented [the defendant's] criminal history. Reducing [the defendant's] criminal-history score for that reason constitutes a departure." (citing USSG § 4A1.13(b)(1); *Beckham*, 838 F.3d 731, 734 (6th Cir. 2016); *United States v. Pembrook*, 309 F.3d 381, 384 (6th Cir. 2010))).

The applicable guidelines range is therefore Ms. Cross's pre-departure guidelines range: 84 to 105 months. *See Gilbert*, 2025 WL 252848 at *2 (vacating the district court's order denying a defendant's Amendment 821 motion because the district court used the guidelines range in the Rule 11 plea agreement as the applicable guidelines range, when it instead should have relied on the pre-departure guidelines range). As the Court has already shown, Amendment 821 decreases this applicable guidelines range to 70 to 87 months, and Ms. Cross was therefore sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.[5]

---

[5] When a defendant and the United States enter into a Rule 11(c)(1)(C) plea agreement, the defendant will still be eligible for a reduction so long as her original guidelines range "was part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes v. United States*, 584 U.S. 675, 687 (2018). At sentencing, the Court "calculated the guidelines range and even granted a downward departure at sentencing," and

To be entitled to relief under § 3582(c)(2), however, Mr. Cross must vault one more hurdle: § 3553(a)'s factors. *See United States v. Hughes*, 584 U.S. 675, 689 (2018) ("Even if a defendant is eligible for relief, before a district court grants a reduction it *must* consider 'the factors set forth in section 3553(a) to the extent that they are applicable[.]'" (emphasis added) (quoting 18 U.S.C. § 3582(c)(2))). The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *Curry*, 606 F.3d at 331, so it has no obligation to readdress each of them now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis will be complete and adequate. *Curry*, 606 F.3d at 330–31 (emphasis added) (internal quotation marks and quotation omitted)).

In Ms. Cross's case, the factors that the Court will address include § 3553(a)(1), (2), and (4):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and

---

"[t]he guidelines range therefore played 'a relevant part of the analytic framework' at sentencing." *Gilbert*, 2025 WL 252848 at *3 n.2 (quoting *id.*).

9

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

18 U.S.C. § 3553(a)(1)–(2), (4). Mr. Cross's criminal offense—i.e., possessing with the intent to distribute five grams or more of methamphetamine—is unquestionably serious in nature, and so are the circumstances of her offense. *See United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v Moss*, 217 F.3d 426, 431 (6th Cir. 2000))); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense[.]" (citations omitted)); *cf. United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (describing a conspiracy to distribute heroin as "grave").

Ms. Cross is fortunate that the United States elected not to pursue the charges for her possession of the firearm, which she agreed was subject to forfeiture because it was "involved in, used in, or facilitated the commission of" her drug-trafficking offense. [Plea Agreement at 4]. If the United States had chosen to pursue the charge of possessing a firearm in furtherance of a drug-trafficking offense—which it agreed to dismiss, [*id.* at 1]—Ms. Cross would have faced a statutory mandatory minimum sentence of five years "in addition to," or consecutive to, the five-year mandatory minimum sentence for the underlying drug-trafficking offense. 18 U.S.C. § 924(c)(1)(A)(i). Together, those two sentences would have added up to ten years of total imprisonment, and her 76-month sentence is just a little more than half of that amount.

In short, Ms. Cross received a favorable outcome at sentencing. *See United States v. Garfias*, No. 5:19-080-DCR, 2024 WL 457763, at *2 (E.D. Ky. Feb. 6, 2024) (recognizing that the defendant had received a favorable outcome at sentencing and declining to grant him a reduction under Amendment 821 because "any further reduction . . . would unduly diminish the seriousness of his offenses"). The Court had the discretion to sentence her at the top of the guidelines range—105 months—or higher. Instead, it afforded her the benefit of a downward departure and sentenced her to a below-guidelines sentence. Ms. Cross today is serving but a fraction of the sentence that she may have otherwise received if not for the United States's and the Court's leniency toward her. Also, the Court would be remiss if it did not note that neither Ms. Cross nor FDSET, in moving for a sentence reduction, address *any* of § 3553(a)'s factors. *See United States v. Ashford*, No. 2:20-CR-00088-1-JRG-CRW, 2025 WL 876768, at *7 (E.D. Tenn. Mar. 20, 2025) (denying a motion under Amendment 821 partly because the defendant, who otherwise qualified for relief, engaged in no "meaningful analysis of § 3553(a)'s factors").

In sum, Ms. Cross and FDSET fail to show that § 3553(a)'s factors warrant a reduction in Ms. Cross's sentence. *See McClain*, 691 F.3d at 777 (recognizing that the defendant "must show" that she is entitled to a sentence reduction under § 3582(c)(2)). Because of the gravity of her offense, the nature and circumstances of her offense, and the favorable outcome that she received at sentencing, a reduction in her sentence simply would not reflect the seriousness of her offense and conduct, promote respect for the law, or provide just punishment, nor would it afford adequate deterrence or protect the public from future crimes. Section 3553(a)'s factors therefore militate against a reduction in her sentence, and she is not entitled to relief under § 3582(c)(2) and Amendment 821.

11

## IV. CONCLUSION

Ms. Cross and FDSET each fail to demonstrate that Ms. Cross is entitled to a sentence reduction under § 3582(c)(2) and Amendment 821, and their motions [Docs. 37 & 39] are therefore **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge